## TARTAR v. FINCH et al.

A. kept a ferry across the Sacramento River under a license which had expired. Having lost his boat, he contracted with B. to furnish, rig, and run another, under the license to A., which he was to renew, until the profits should repay B.'s advances, with interest. A. neglected to renew his license. B., after waiting four months, applied for and obtained a license in his own name, and ran a ferry under the same. A. brought suit against B. for an accounting and return of ferry. *Held*, that A. had failed to carry out his agreement, and could not recover.

APPEAL from the District Court of the Ninth Judicial District, County of Shasta.

A statement of the facts appears in the opinion of the Court.

*Heydenfeldt* for Appellant.

*P. L. Edwards* for Respondents.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The facts necessary to illustrate the opinion were substantially these : Newell Hall kept a ferry across the Sacramento River, at Tehama, from October, 1851, up to February, 1854, under a license from Butte county. His license expired on the eighth day of October, 1853, and his ferry-boat was swept away by a flood in February, 1854. Being unable to build another boat, it was agreed, between Hall and defendants, in the latter part of March, 1854, that defendants should furnish the means and build a ferry-boat, and keep the ferry under the license to Hall ; and, after deducting from the amounts received for ferriage a sufficient sum to cover the cost of the boat, and interest, and expenses, the defendants were to return the boat and ferry to Hall. On the seventh day of August, 1854, Hall made application for license to keep the ferry, which application was rejected. On the sixth day of December, 1854, Finch made application for a license, which was granted for the period of one year. The defendants, Chard and Finch, have kept the ferry from the date of the agreement between Hall and defendants up to the commencement of this suit. Hall assigned his interest in the ferry to Crosby, and he to the plaintiff. This suit was brought for an accounting and a return of the ferry. The defendants had judgment in the Court below, and the plaintiff appealed.

We think the decree of the Chancellor was correct. The complaint alleges that the defendants were to renew the license in the name of Hall. This is denied in the answer, and is not sustained by the proof. The evidence of the plaintiff shows that the defendants were to keep the ferry, under the license to Hall.

At the time this agreement was made, Hall had no license. Whether the defendants knew that fact, or supposed he had a license, is not shown by the proof. But from the proof, it seems clear that Hall was to attend to the renewal of the license. This he attempted, but the Court refused to grant him the license, for want of proof of notice having been given. It appears that Hall failed to obtain a license, from his own negligence, and from no fault of the defendants. Finch then waited four months for Hall or his assignee to procure the license. But.no further effort was made by Hall or Crosby. In the meantime, defendants were violating the law at their own risk, by keeping a ferry without a license. From the testimony, it appears most probable that Hall did not intend to make any further effort to procure the license. He sold to Crosby the sixth of November, 1854, for one hundred dollars. At this time, the ferry was largely indebted to defendants for their advances. The prospect of paying this amount, with two and one-half per cent. interest per month, and the expenses of keeping the ferry, was certainly not very good. After the interest of Hall was assigned to Crosby, the latter made no effort to procure a license. The failure to carry out the agreement was on the part of Hall and Crosby. The defendants waited as long as they should have done, under the circumstances.

Decree affirmed.